UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, ex rel.        )
      EARL JOHNSON,                              )
                                    )
          Petitioner,                                      )
                                      )
             v.                                             )        No. 05 C 2475
                                      )
JOHN CHAMBERS,                            )
                                      )
         Respondent.                                     )
                                      )

<u>MEMORANDUM OPINION AND ORDER</u>

MARVIN E. ASPEN, District Judge:

Earl Johnson ("Petitioner" or "Johnson") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he received ineffective assistance of counsel in violation of his rights under the United States Constitution. Respondent John Chambers, Warden of the Danville Correctional Center (the "State"), responded on August 5, 2005, contending that each of Petitioner's claims is either procedurally defaulted or without merit. For the reasons set forth below, we deny Johnson's petition.

*BACKGROUND*

On November 7, 1994, Petitioner was convicted, following a jury trial, of first degree murder of Leo Patterson, attempted first degree murder of Dexter Patterson, and aggravated battery with a firearm of Dexter Patterson. He was sentenced to concurrent forty-five years imprisonment for first degree murder, thirty years imprisonment for attempted murder and thirty years imprisonment for aggravated battery.

At trial, Petitioner's uncle, Frederick Johnson, testified that he and Petitioner were at

Frederick's home watching a movie with three other people. Frederick testified that while at home, he went outside, saw ambulances and heard that someone had been shot. Frederick stated that he then returned to the house and informed the defendant about the shooting. Finally, Frederick attested that he, Petitioner and Andre De Curre went to the scene of the shooting where they learned that the victim was Leo Patterson. However, in his initial written statement to the police, he admitted to being in a car with Fred House (the driver), Petitioner, Tracy Ferguson, Andre De Curre, and an individual named Mario. According to his written statement, Frederick witnessed Petitioner twice fire his pistol at Leo Patterson and his brother Darryl Patterson.

Petitioner appealed his conviction to the Illinois Appellate Court ("appellate court") on the grounds that the prosecutor made improper remarks during his closing argument. Petitioner also argued that his counsel, Milton Blum, was ineffective because he failed to request a mistrial when several alibi witnesses improperly entered the courtroom and because Blum allowed, without objection, Frederick Johnson's written statement to go to the jury during deliberations. Finally, Petitioner claimed that Blum elicited evidence that actually damaged the defense, including Darryl Patterson's prior consistent statements and various witnesses' unemployment. The appellate court denied these claims and affirmed Johnson's conviction for murder and attempted murder.

Petitioner subsequently filed a petition for rehearing with the appellate court, arguing that the Court's order misstated the facts and law of the case and ignored the plain error doctrine. Johnson's petition was denied.

On January 14, 1998, Johnson, *pro se*, filed a petition for leave to appeal with the Illinois

Supreme Court, presenting arguments almost identical to those in the appeal submitted to the appellate court. Petitioner argued that the State made improper remarks during closing arguments regarding the status of state witnesses and shifting the burden of proof, which unfairly bolstered the State's case. He also claimed that he was denied effective assistance of counsel where Blum did not properly object when the trial court automatically allowed the jury to review Frederick Johnson's disavowed prior inconsistent statement and where Blum failed to request a mistrial when four defense witnesses were excluded. On March 9, 1998, the Illinois Supreme Court denied his petition for leave to appeal.

Petitioner also sought collateral review pursuant to the Illinois Post-Conviction Hearing Act. *See* 725 ILCS 5/122-1 *et seq.* On December 29, 1997, Johnson, acting *pro se*, filed leave for a post-conviction hearing with the Circuit Court of Cook County to vacate his conviction and grant a new trial. Johnson argued that he was entitled to a new trial in light of newly discovered evidence. He also claimed that he was denied effective assistance of counsel and a fair trial where Blum failed to object to the sentence of 45 years as excessive.

On November 5, 1999, the State filed a supplemental motion to dismiss on the grounds that post-conviction review was limited by *res judicata* and waiver, arguing that Johnson had discovered no new evidence and that Blum was not ineffective in deciding not to challenge the excessive sentence in post-trial motions. On April 16, 2002 and April 19, 2002, evidentiary hearings were held before Judge Francis Golniewicz, who denied post-conviction relief.

On June 2, 2003, Petitioner filed an appeal with the appellate court, arguing that he was entitled to post-conviction relief based on the testimony of a co-defendant, Fred House, exonerating him in the murder. Petitioner argued that firearms evidence corroborated House's

3

testimony by demonstrating that the bullet that killed Patterson came from Zachary Peavey's gun. The implication of Peavey, Johnson claimed, was also corroborated by Peavey's statement against penal interest admitting that he shot Leo Patterson. Petitioner further argued that the trial court erred in dismissing his claim of ineffective assistance of counsel where Blum failed to admit evidence that Frederick Johnson was mentally disabled, failed to investigate alibi witnesses and failed to file a motion for a new trial based on ballistics evidence implicating Peavey.

On March 31, 2004, the appellate court affirmed the denial of Johnson's post-conviction petition in a written opinion, finding that Petitioner failed to show that the trial court's denial of his claim based on newly discovered evidence was manifestly erroneous and affirming the judgment of the circuit court. A few weeks later, Johnson filed a petition for rehearing of the case, arguing that he had presented conclusive, newly discovered evidence of his actual innocence sufficient to warrant a new trial and that the ineffective assistance of counsel claim should not have been dismissed. The appellate court denied that petition on May 17, 2004.

On June 21, 2004, Johnson filed a petition for leave to appeal to the Illinois Supreme Court, which was denied on September 13, 2004. Johnson then filed this Petition for writ of habeas corpus on April 26, 2005.[1] In his Petition, Johnson claims five grounds for denial of effective assistance of counsel, but we have further separated the multiple claims within each ground into twelve distinct issues.[2] Johnson argues that he was denied effective assistance of counsel where:

---

[1] On February 22, 2006, we granted Johnson leave to file an amended habeas petition. Because he did not avail himself of that opportunity, we address the claims as presented in his original petition.

[2] In the substance of this opinion, we occasionally refer to claims by the numbers listed above.

1) Blum failed to request a mistrial when four alibi witnesses entered the courtroom in violation of the motion to exclude witnesses and were therefore barred from testifying;

2) Blum failed to investigate and present the testimony of two of his neighbors as alibi witnesses;

3) Blum failed to investigate and present evidence that Zachary Peavey admitted to Kimberly Hilliard and Wendy Floyd that he shot the murder victim;

4) Blum failed to investigate and present the testimony of Fred House, whose testimony would have demonstrated a reasonable probability that Petitioner did not commit the crimes for which he was convicted;

5) Blum failed to cross examine prosecution witness Dexter Patterson concerning his blood alcohol level at the time he witnessed the shooting;

6) Blum failed to cross examine prosecution witness Frederick Johnson using records showing that he was mentally handicapped;

7) Blum failed to object to improper remarks made by the prosecutor during closing argument;

8) Blum failed to object to delivery of Frederick Johnson's written statement to the jury during deliberations;

9) Blum failed to request a limiting instruction that the prior convictions of defense witnesses could only be considered to weigh the witness's credibility;

10) Blum improperly elicited testimony from Officer James Robinson that provided details consistent, rather than inconsistent, with the testimony of one of the State's eyewitnesses;

11) Blum improperly elicited testimony from his four alibi witnesses indicating that they

were unemployed; and

12) during closing arguments, Blum made ineffective arguments that were damaging to the defense.  (Pet. at 18-34.)

*DISCUSSION*

*A. Procedural Prerequisites*

28 U.S.C. § 2254(a), as amended, empowers a district court to entertain a petition for writ of habeas corpus from a person in custody pursuant to the judgment of a state court on the ground that he or she is in custody in violation of the Constitution, laws, or treaties of the United States.  Habeas relief may be granted only if the adjudication of the claim by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).   Before a court can review a habeas petition on the merits, it must conclude that the prisoner took advantage of "one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process."  *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 1732 (1999) (discussing exhaustion doctrine).  Further, the federal court must find that details regarding the substance of the petitioner's federal claim were first presented to the state courts.  *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 513 (1971) (discussing procedural default doctrine).  The parties agree that Petitioner exhausted his state remedies, and we similarly find that no avenues remain open for Johnson to present his claims.  Thus, the first question for this Court is whether the issues raised by Petitioner are barred from our consideration by the procedural default doctrine.

The procedural default doctrine will preclude a federal court from reaching the merits of

a habeas claim when either (1) that claim was presented to the state courts and the underlying ruling against the petitioner rests on adequate and independent state-law procedural grounds; or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 735, 111 S.Ct. 2546, 2557-2558 (1991). To avoid procedural default, a state prisoner must fully and fairly present his constitutional claims in state court. *See Wilkinson v. Cowan*, 231 F.3d 347, 350 (7th Cir. 2000). Generally, when a state prisoner has defaulted his federal constitutional claims in state court on a state law ground that is independent and adequate to support the judgment, comity dictates that federal courts are bound by that holding. *See White v. Peters*, 990 F.2d 338, 340 (7th Cir. 1993); *see also Wainwright v. Sykes*, 433 U.S. 72, 86-87, 97 S.Ct. 2497, 2506-2507 (1977).

### B. Procedurally Defaulted Claims

*1. Blum's failure to object to remarks made in state's closing argument; and ineffective closing argument*

The State correctly argues that Johnson procedurally defaulted the following claims by virtue of his failure to raise them in Illinois state courts: first, Blum's failure to object to improper remarks made by the State in closing arguments; and second, Blum's ineffective closing argument.[3] While Petitioner presented a number of ineffective assistance of counsel

---

[3]The State also contends that Petitioner defaulted his argument that Blum failed to investigate and present the testimony of Fred House. Although Petitioner seems to admit this default, our review of the underlying briefs and relevant appellate court opinion confirms that he presented this issue to the Illinois courts during post-conviction proceedings and that the appellate court considered it. (*See* State's Feb. 27, 2001 Add'l Resp. in Supp. Mot. Dismiss Post-Conv. Proc. at 5-6 (attached as part of Ex. H of Rule 5 submissions); State's Brief and Arg. for Plaintiff-Appellee opposing Johnson's Appeal of Denial of Post-Conv. Relief at 41-42 (attached as Ex. J of Rule 5 submissions); Johnson's Reply in Support of Post-Conv. Relief Pet. at 3 (attached as Ex. K of Rule 5 submissions); *People v. Johnson*, No. 1-02-1116, slip. op. at 10-11 (1st Dist. Mar. 31, 2004) (attached as Ex. L of Rule 5 submissions); *but see* Reply at 1-2

claims on appeal to the Illinois state courts, he did not raise the ineffectiveness of Blum's closing

argument prior to the habeas petition, and thus, it is procedurally defaulted. *See United States ex*

*rel. Bell v. Pierson*, 267 F.3d 544, 555 (7th Cir. 2001). We find that although the underlying

evidentiary basis of the claim that Johnson received ineffective assistance of counsel where

Blum failed to object to statements made by the State in closing arguments was raised in

previous state court appeals as a *prosecutorial misconduct* claim (which Johnson concedes), his

failure to frame the question as ineffective assistance of counsel renders that claim also

procedurally defaulted.[4] (Reply at 9-10.)

In his Reply, Johnson asks us to strike the failure to object claim raised as an ineffective

assistance of counsel claim, and consider it instead as an allegation of prosecutorial misconduct.

(Reply at 10.) We may permit the amendment of habeas petitions as provided by the Federal

Rules of Civil Procedure. 28 U.S.C. § 2242 (habeas corpus application "may be amended or

─────────────────────

(failure to present House's testimony argued in state court "although not raised in terms of ineffective assistance").) We conclude that the ineffective assistance claim based on the neglected testimony of Fred House is not defaulted and will be addressed on the merits.

[4]In *Lewis v. Sternes*, the Seventh Circuit dealt with a similar case. 390 F.3d 1019 (7th Cir. 2004). The petitioner, Peter Lewis, had been arrested and convicted of residential burglary. *Id.* at 1021. In his habeas petition, Lewis asserted four claims of ineffective assistance of counsel. *Id.* at 1022. The Seventh Circuit affirmed the dismissal of two of the claims for procedural default:

> We reject Lewis's contention that *Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), permits us to overlook the procedural defaults he committed as to his claims of attorney ineffectiveness. *Massaro* held simply that a federal prisoner may assert an ineffectiveness claim on collateral review under 28 U.S.C. § 2255 even if the claim was one that he could have raised (but did not) on direct appeal. *Massaro* is entirely silent on the subject of state prisoners making ineffectiveness claims under section 2254, and it certainly does not purport to overrule ample precedent holding that habeas petitioners must present their claims of attorney ineffectiveness to the state courts before seeking relief in federal court.

*Id.* at 1032 (citation omitted). Because this ineffective assistance of counsel claim was not previously raised, it has never been subject to the *Strickland* analysis necessary to evaluate the merits of the claim. *See Williams v. Taylor*, 529 U.S. 362, 390-391, 120 S.Ct. 1495, 1511-1512 (2000); *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064-2065 (1984).

supplemented as provided in the rules of procedure applicable to civil actions"); Rule 11 of the

Rules Governing Section 2254 Cases in the United States District Courts (mandating that the

Federal Rules apply where consistent with habeas corpus rules); Fed. Rule Civ. Proc. 15

(governing amendment of pleadings); *Mayle v. Felix*, 125 S.Ct. 2562, 2569 (2005). Although

amendments should be granted freely when justice requires, the right to amend pleadings "is not

absolute and is appropriately denied when, among other reasons, the amendment would be

futile." *Brunt v. SEIU,* 284 F.3d 715, 720 (7th Cir. 2002). In this case, Petitioner requests that

we grant leave to amend his habeas application and substantively address his claim that certain

remarks in the State's closing argument amounted to prosecutorial misconduct.

Unfortunately for Petitioner, the prosecutorial misconduct claim is itself defaulted. In its

opinion on Johnson's direct appeal, the appellate court held that he waived this particular issue

by failing "to both object to [this matter] at trial and to raise [it] in his post-trial motion as

required." *People v. Johnson*, No. 1-95-0854, slip. op. at 13 (1st Dist. July 21, 1997). Waiver

constitutes the "adequate and independent state-law procedural grounds" necessary for

procedural default to occur. *Miranda v. Leibach*, 394 F.3d 984, 995 (7th Cir. 2005) ("Moreover,

our own cases have cited the waiver rule as an adequate and independent ground for the

decisions of Illinois courts."); *Rodriguez v. McAdory,* 318 F.3d 733, 735 (7th Cir. 2003); *White

v. Peters*, 990 F.2d 338, 340-341 & n.1 (7th Cir. 1993); *see also Aliwoli v. Gilmore*, 127 F.3d

632, 634 (7th Cir. 1997) ("If a claim is found to be waived by an Illinois appellate court, that

constitutes an independent and adequate state ground and we will not entertain that claim."). As

a result, we deny his request for leave to amend the petition as futile and cannot consider the

proposed prosecutorial misconduct claim on its merits.[5]

*2. Blum's failure to cross examine Dexter Patterson concerning his blood alcohol level*

Petitioner's fifth claim, that Blum failed to cross examine prosecution witness Dexter Patterson concerning his blood alcohol level at the time he witnessed the shooting, is also procedurally defaulted due to waiver. The appellate court, reviewing Johnson's post-conviction petition, explicitly held that he waived this argument by failing to comply with the Illinois procedural requirement that petitioners raise all claims in their petitions. *People v. Johnson*, No. 1-02-1116, slip. op. at 7-8 (1st Dist. Mar. 31, 2004). We therefore hold that Johnson is procedurally defaulted from pursuing this claim.

*3. Cause and Prejudice*

Even if a claim has been procedurally defaulted, a court may hear the claim on the merits if the petitioner "can establish both cause for the procedural error and prejudice resulting from that error." *Pisciotti v. Washington*, 143 F.3d 296, 300 (7th Cir. 1998) (*citing Aliwoli*, 127 F.3d at 634); *see also Momient-El v. DeTella*, 118 F.3d 535, 541 (7th Cir. 1997). A petitioner may establish cause for a procedural default by demonstrating that he received ineffective assistance of appellate counsel. *Momient-El*, 118 F.3d at 541. However, the appellate ineffective assistance claim must have been presented to the state courts in the manner required by state procedural rules. *See Edwards v. Carpenter*, 529 U.S. 446, 451-453, 120 S.Ct. 1587, 1591-1592 (2000); *Murray v. Carrier*, 477 U.S. 478, 488-489, 106 S.Ct. 2639, 2645-2646 (1986); *Momient-El*, 118 F.3d at 539. Here, Petitioner does not bring a claim of ineffective assistance on the part

---

[5]We observe that Petitioner did not advance this argument in his appeal following the denial of post-conviction relief. (Brief and Arg. for Petitioner-Appellant supporting Appeal of Denial of Post-Conv. Relief (attached as part of Ex. H of Rule 5 submissions).)

of his appellate counsel. Reviewing the Petition as a whole, he has not alleged cause for his failure to raise these claims before the state courts. *Lewis*, 390 F.3d at 1026.

Nonetheless, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496. The "fundamental miscarriage of justice" exception is "narrow" and limited to "extraordinary" cases where the petitioner is actually innocent of the crime of conviction. *Steward v. Gilmore,* 80 F.3d 1205, 1212 (7th Cir. 1996); *Lemons v. O'Sullivan,* 54 F.3d 357, 361 n.3 (7th Cir. 1995) (citing *Murray,* 477 U.S. at 496). Evaluating the stringent actual innocence standard, the Supreme Court observed that:

> [t]he petitioner must support his claim 'with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial.' Because *Schlup* explicitly states that the proffered evidence must be reliable, the habeas court must determine whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record.

*Murray,* 477 U.S. at 496 (*quoting Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865-866 (1995)). Moreover, the petitioner must prove that it is more likely than not that "no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327; *see also Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim.").

Petitioner argues that, while a claim of actual innocence (as an excuse for procedural default) was never explicitly made, such a claim can be garnered from the evidence presented in

his Petition.[6]  (Reply at 11.)  Johnson lists as this new evidence: a May 21, 2000 affidavit of Fred

House stating that Johnson was not involved in the shooting; the statement of his mother, Renee

Johnson, that she received an anonymous call implicating Zachary Peavey as the shooter;

affidavits of Kimberly Hilliard and Wendy Floyd indicating that Peavey confessed his

involvement in the shooting to them; and finally, ballistics evidence indicating that the bullet that

had killed Leo Patterson came from Zachary Peavey's gun.  We agree with Johnson that his *pro*

*se* Petition encompasses an argument that he is actually innocent.[7]  (*See* Reply at 2-4, 7-12.)

---

[6]The State acknowledges that a potential claim of innocence could lie in Johnson's argument that he was denied effective assistance of counsel where Blum failed to investigate Fred House's potential testimony.  (Ans. at 12 n.2.)  The State, however, gets ahead of itself in attacking the merits of that ineffective assistance claim as a means to support its default arguments.  (*Id.*)  For purposes of the procedural default analysis, we are not concerned with the merits of an ineffective assistance claim that is based on the same facts supporting a claim of innocence.  Our concern focuses on the preliminary question of whether default bars our further review, or can be excused.  At this point, we must evaluate Petitioner's claim that he is actually innocent.

[7]We find it irrelevant that Petitioner first raised his claim of actual innocence as a free-standing claim during his post-conviction proceedings.  As Petitioner stated in his Reply, Illinois recognizes a free-standing claim of actual innocence available during post-conviction review that is not cognizable on federal habeas review.  (Reply at 2-4.)  *People v. Hobley*, 182 Ill.2d 404, 443, 696 N.E.2d 313, 332-333 (Ill. 1998); *People v. Washington*, 171 Ill.2d 475, 489, 665 N.E.2d 1330, 1337 (Ill. 1996); *see also Herrera v. Collins*, 506 U.S. 390, 406, 113 S.Ct. 853, 863-864 (1993).  This free-standing claim arises under the due process clause of the Illinois constitution, where the petitioner presents newly discovered evidence showing his or her actual innocence.  *Washington*, 171 Ill.2d at 489.  The newly discovered evidence, however, does not make out a free-standing actual innocence claim if it simply serves to support a claim of some constitutional violation that occurred at trial.  *Hobley*, 182 Ill.2d at 443.  This framework is not, as Petitioner contends, a procedural rule that prevented him from arguing that Blum was ineffective.  Rather, the evidence cannot serve two purposes for a substantive reason: if newly discovered, it could not have resulted in a violation at a presumably constitutionally sound trial; if not newly discovered, it probably *should have been* presented and thus supports a claim for violation of trial rights.

Petitioner's case highlights the issue.  In the post-conviction proceedings, Petitioner argued that the House testimony was newly discovered evidence establishing his actual innocence.  In response, the State claimed that it was not newly discovered because House could have testified at Petitioner's trial after being acquitted of the same charges.  In addition to attacking that argument, Petitioner contended that even if the State was correct and House could have testified, Blum was ineffective for failing to subpoena his testimony for Johnson's original trial.  Though the evidence could not prove both alleged constitutional violations, Petitioner argued them in the alternative, and the appellate court addressed each.  Here, however, Petitioner seems to argue only that Blum was ineffective for failing to investigate and

Having carefully reviewed this evidence and the records of Johnson's trial and post-conviction proceedings, we conclude that ballistics information and statements presented simply do not prove that Johnson is actually innocent. This evidence suggests that House and two other men, neither of whom were Petitioner, participated in the shooting but that Zachary Peavey fired the fatal bullet. Unfortunately for Petitioner, the Floyd, Hilliard and Renee Johnson affidavits along with the ballistics evidence do not exonerate him. While implicating Peavey (who died in January 1998), they do not foreclose the possibility that Petitioner was also involved in the attack on the Patterson brothers. The affidavits and ballistics report do not, for example, provide an airtight alibi for Petitioner or even contradict the testimony of trial witnesses placing him at the scene of the crime. Even if it is true that Peavey killed Leo Patterson, this evidence does not show that Petitioner was not at the scene of the crime also firing at the victim. As Johnson was originally convicted on an accountability theory, we cannot say that no reasonable juror would have convicted him in light of this evidence.

Unlike the other new evidence, House explicitly states in his affidavit that he did not see Petitioner. Indeed, he swears that Petitioner "was not involved in the shooting." House's affidavit, however, is not particularly reliable in light of his initial statements to police and his earlier November 5, 1998 affidavit. When questioned by police about the attempted murder of Dexter Patterson and murder of Leo Patterson, House denied any involvement. In 1998, and following his acquittal of wrongdoing in the Patterson matter, House signed an affidavit prepared by Tracey Ferguson (also accused of these crimes) and admitted that he was the driver of a car from which Zachary Peavey and an unknown friend of Peavey's shot at the Pattersons. In the

present House at his trial. (Pet. at 23-24.)

13

2000 affidavit relied upon by Petitioner, House again said he drove the vehicle but claimed that Joe Posey and Troy Dean fired at the victims. According to House, Peavey came to his home immediately after the shooting and asked House to hide the murder weapon, which he did. At the post-conviction hearing House acknowledged that even after he was acquitted, he hesitated to testify at Petitioner's trial because he was unwilling to identify the gunmen. Had he testified (or were he to testify at a new trial), it is likely, depending on the timing, that the State would have attempted to impeach House with evidence of his attempted murder conviction concerning another December 1993 shooting.

Even if the testimony in House's 2000 affidavit appeared reliable, it is not so compelling that no reasonable juror would have convicted Petitioner. Two eyewitnesses, Dexter and Darryl Patterson, identified Petitioner as one of the shooters, both in line-ups shortly after the crime and at trial. House's statement – made years later and only after his acquittal for the Patterson shootings and Peavey's death – does not amount to the type of powerful and certain evidence necessary to prove actual innocence. *See Hayes*, 403 F.3d at 938. Because this is not the extraordinary case, the miscarriage of justice exception does not apply. Accordingly, we will not consider Johnson's procedurally defaulted claims.

*C. Ineffective assistance of counsel standard of review*

Nine of Petitioner's claims of ineffective assistance of counsel are not procedurally defaulted, and so remain for us to review on the merits. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693,

122 S.Ct. 1843, 1849-1850 (2002) (*citing Williams*, 529 U.S. at 403-404). In order to obtain

habeas relief under the AEDPA, a petitioner must establish that the proceedings in state court

resulted in a decision (1) "that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States," or

(2) "that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d). In *United States ex rel. Hampton*

*v. Leibach*, the Seventh Circuit held that "[a] state-court decision that correctly identifies the

governing legal rule but applies it unreasonably to the facts of a particular prisoner's case

certainly would qualify as a decision 'involving an unreasonable application of . . . clearly

established Federal law.'" 347 F.3d 219, 245 (7th Cir. 2003) (*quoting Williams*, 529 U.S. at

407-408). The *Hampton* court further explained that "'[u]nreasonable' means something more

than 'mistaken,' however . . . [a] state court decision is unreasonable for purposes of section

2254(d)(1) if its application of Supreme Court precedent 'lies well outside the boundaries of

permissible differences of opinion.'" *Id.* (*quoting Hardaway v. Young*, 302 F.3d 757, 762 (7th

Cir. 2002)).

Therefore, the question before this Court is whether the appellate court "unreasonably"

applied the standards of *Strickland* to Johnson's case. *Strickland* provides that in order to obtain

relief based on an ineffective assistance of counsel claim, a petitioner must show that: 1)

counsel's performance fell below an objective standard of reasonableness; and 2) the deficient

performance prejudiced the defendant. *Strickland*, 466 U.S. at 688, 696. To meet the first

prong, a petitioner "must demonstrate that his lawyers performed deficiently, i.e., that their

mistakes were so serious that they deprived him of 'counsel' within the meaning of the Sixth

Amendment." *Bieghler v. McBride*, 389 F.3d 701, 707 (7th Cir. 2004). The question of reasonableness, however, need not be reached by this Court if we first determine that the defendant was not prejudiced by Blum's actions. The Supreme Court in *Strickland* observed that

> a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697. To demonstrate sufficient prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### 1. Failure to request a mistrial

The basis for Petitioner's first claim of ineffective assistance of counsel is that Blum failed to request and/or accept a mistrial when four alibi witnesses were prohibited from testifying after they entered the courtroom in violation of the motion to exclude witnesses. At trial, Blum called three witnesses to testify - Leon Buckner, Jermaine Wright and Andre De Curre, all of whom testified that they were "at Earl Johnson's house watching Home Alone 2 on the night of the shooting." (Pet. at 19.) Petitioner contends that the four witnesses excluded by the trial court from testifying (Renee Johnson, Wendell Hill, Melika Taylor and Dante Johnson) would have been the "primary and most credible alibi witnesses" available to the defense. *Id.* Petitioner, however, fails to meet either prong of the *Strickland* test. First, Petitioner has not demonstrated that Blum's refusal of a mistrial based on the exclusion of witnesses was in any way unreasonable. Under *Strickland*, an attorney's decision whether or not to place a witness

on the stand during a trial is generally considered a tactical decision and is thus entitled to great deference. 466 U.S. at 689-691; *see Bell*, 535 U.S. at 700-701; *Armond v. Pierce*, No. 05 C 2553, 2005 U.S. Dist. LEXIS 24329, at *31-36 (N.D. Ill. Oct. 18, 2005). Similarly, and as the Seventh Circuit held in *Galowski v. Murphy*, "[t]he decision whether to move for a mistrial or instead to proceed to judgment with the expectation that the client will be acquitted is one of trial strategy."[8] 891 F.2d 629, 639 (7th Cir. 1989); *see Sanders v. Israel*, 717 F.2d 422, 424 (7th Cir. 1983) ("Trial strategy was not to move for a mistrial in the hope that [defendant] would be acquitted on the basis of the jury's knowledge that a key state eyewitness had committed perjury."). In rejecting Petitioner's argument on direct appeal, the appellate court simply – and reasonably – deferred to Blum's trial strategy. *People v. Johnson*, No. 1-95-0854, slip. op. at 17.

Petitioner also fails to meet the "prejudice" prong of the *Strickland* test. To do so, Petitioner would have to demonstrate that had a motion for mistrial been granted, the testimony of the four barred witnesses in the new trial would have changed the trial's outcome. *Strickland*, 466 U.S. at 694. Considering this claim on its merits during collateral review, the appellate court found that Johnson's "suggestion that the excluded witnesses, each of whom could have been cross-examined as to bias based on their family or romantic relationship with [petitioner], were more credible than those that testified [wa]s simply unpersuasive." *People v. Johnson*, No. 1-02-1116, slip. op. at 9. As the appellate court also found, the testimony of two eyewitnesses provided additional

---

[8]The *Galowski* court held that, "We cannot fault Ms. Sfasciotti [petitioner's trial attorney] 'in retrospect for an omission which may well have been a proper exercise of [her] role, and a legitimate effort 'to present the client's case in accord with [her] professional evaluation.'" 891 F.2d at 639 (citations omitted).

evidence against the defendant, evidence that would not have been directly disputed by the testimony of the four excluded witnesses.  Given that Petitioner cannot show that these four witnesses promised more reliable evidence than the three witnesses who did testify, and that he does not argue that the four witnesses would have contradicted the Pattersons' testimony, we hold that he did not demonstrate any prejudice by Blum's decision to decline a mistrial.

### 2. Failure to investigate and present the testimony of two alibi witnesses

Johnson next argues that Blum's failure to investigate and present the testimony of two of his neighbors, Rushaun Hubbard and Hubbard's brother as alibi witnesses constituted denial of effective assistance of counsel.  (Pet. at 20.)  We reject this claim.

First, there is no indication in the record that he informed Blum of the existence of Rushaun Hubbard or his brother, either before or during his trial.  As the appellate court observed, Johnson himself made no mention of the Hubbard brothers during his testimony.  In *Bieghler*, the court dealt with similar facts, in which "the potential alibi witness did not come forward before or during trial and . . . was discovered by chance later on."  389 F.3d at 708.  The *Bieghler* court found that under these circumstances, the defense "counsels' failure to find the alibi witness was understandable and not a product of a constitutionally deficient investigation."  *Id.*  As in *Bieghler*, the facts that Johnson failed to provide Hubbard's name to Blum and that Blum otherwise had no reason to be aware of Hubbard's existence render the failure to locate Hubbard "understandable and not a product of a constitutionally deficient investigation."  *Id.*

Second, the appellate court found several factual problems with the affidavit of

Rushaun Hubbard.  Earl Johnson (Petitioner) testified at trial that Frederick Johnson exited the house where Earl was during the shooting and returned moments later telling the occupants of the house that someone had been shot down the street.  In his affidavit, Hubbard says Earl Johnson asked Hubbard what was going on down the street, which, if introduced at trial, might have raised the question of why Earl Johnson was asking Hubbard what had happened since Frederick Johnson already told him about a shooting. Although Hubbard states that he saw Earl Johnson exiting his house several minutes after hearing a gunshot, his testimony does not provide an alibi for Johnson at the time of the shooting.  Given the factually problematic nature of Hubbard's testimony and the absence of evidence that Blum knew of the potential witness' existence, we agree with the appellate court that Blum's actions were not unreasonable or prejudicial.

### 3. Failure to investigate and present evidence of Zachary Peavey's admission

Petitioner's third claim of ineffective assistance of counsel is that, when preparing a motion for a new trial, Blum failed to investigate and present evidence that Zachary Peavey admitted to two people that he shot the murder victim.  The appellate court evaluated the evidence of Peavey's alleged confession.  The Court found that the only knowledge Blum had of Peavey's confession was Renee Johnson's assertion that she had received a phone call from an unidentified person who named Peavey as a party involved in the shooting.  According to Johnson's mother, the anonymous caller indicated that Peavey had been arrested and had a gun seized from his person at the time of the arrest – the same gun to which Petitioner refers in his brief.  (Pet. at 20.)  The appellate court held that Blum could have reasonably concluded that the anonymous hearsay did not require

investigation. *People v. Johnson*, No. 1-02-1116, slip. op. at 11. The court commented

that even if the gun seized upon Peavey's arrest was connected to the shooting, the

introduction of the hearsay evidence and the gun would have been unlikely to cause the

trial court to order a new trial. *Id.* We agree.

For a motion for a new trial to be granted on the basis of newly discovered

evidence, "the evidence must be of such conclusive character that it will probably change

the result upon retrial; material and not merely cumulative; discovered since the trial; and

of such character that it could not have been discovered prior to trial by the exercise of

due diligence." *People v. Deloney*, 341 Ill. App. 3d 621, 627, 793 N.E.2d 189, 194 (1st

Dist. 2003); *see also People v. Patterson*, 192 Ill. 2d 93, 139, 735 N.E.2d 616, 642 (Ill.

2000); *People v. Molstad*, 101 Ill. 2d 128, 134, 461 N.E.2d 398, 401-402 (Ill. 1984). The

appellate court correctly concluded that the Peavey confession and gun possession

evidence lacked sufficient merit to rise to the level of "conclusive character" that would

result in a different outcome at trial.[9] The introduction of proof that Peavey's gun related

to the shooting would not have altered the trial's result, as Johnson was convicted on an

accountability theory that held him legally culpable for the murder of Leo Patterson and

the attempted murder of Dexter Patterson because he fired in the direction of the

victims.[10] For the same reason, and assuming Peavey's confession could have been

_____

[9]We further agree with the court that this information could have been discovered prior to trial.
*People v. Johnson*, No. 1-02-1116, slip. op. at 5. Indeed, the post-conviction record reveals that Hilliard
and Floyd personally told Petitioner about Peavey's admission *before* his trial. It does not indicate that
Petitioner shared this information with his counsel. Renee Johnson received the anonymous call two days
after Petitioner's conviction and notified Blum soon thereafter.

[10]*See Miranda v. Leibach*, 394 F.3d 984, 988 (7th Cir. 2005) ("Under Illinois law, one person is
legally accountable for a crime committed by another when, before or during the offense, he aids (or tries

verified, that confession would not have warranted a new trial. We therefore hold that Blum was not ineffective for failing to file a motion for a new trial on this ground.

### 4. *Failure to investigate and present testimony of Fred House*

Johnson also alleges that Blum was ineffective for failing to investigate Fred House's involvement in the Patterson shootings and present his testimony at trial, or in seeking a new trial.[11] As House was charged with the same crimes for which Johnson was convicted, Johnson and Blum certainly were aware of House prior to trial. Indeed, House testified that he believed he told Johnson that he would testify in Johnson's defense at trial, though he probably would not identify guilt parties. (Tr. Post-Conv. Proceedings at A-138.) The record, however, does not suggest that Johnson ever informed Blum of this possibility. Regardless, Blum could not force House to testify on behalf of Petitioner, as such testimony would compromise House's Fifth Amendment right against self-incrimination.

Johnson apparently claims that Blum should have enlisted House's assistance after his acquittal in the Patterson case, which occurred several weeks before Johnson's trial began. At that time, House faced another trial for an unrelated attempted murder charge. (*Id.* at B-38.) Nonetheless, within a week of House's acquittal of the Patterson charges, Blum visited him to gather information about the witnesses at his bench trial.

---

to aid) the planning or commission of the crime with the intent to facilitate or promote the commission of the crime.").

[11]It is unclear whether Johnson claims at this stage that Blum was ineffective for failing to seek a new trial based on House's testimony, or for failing to present him at the trial initially. Only the former issue appears to have been presented to the Illinois courts, but we address both arguments out of an abundance of caution.

(*Id.* at A-90, 92.)  Blum testified at the post-conviction hearing that he also contacted Mr.

House's counsel to discuss possible cooperation at Petitioner's trial.  (*Id.* at A-92.)

House's attorney was "annoyed" at him for contacting House and told him not to

interview House again.  (*Id.* at A-92, 93.)  In light of these circumstances, it was not

unreasonable for Blum to conclude that House would not be willing to testify voluntarily

on Johnson's behalf.[12]

As before the appellate court, Petitioner seems to contend that Blum should have

used House's testimony to seek a new trial.  House, however, did not contact Johnson or

Blum after Johnson's conviction to offer assistance.  (*Id.* at A-140.)  According to the

record, House's 1998 affidavit – *four years* after Johnson's conviction – was the first

time House publicly expressed any willingness to testify.  There is no evidence that Blum

knew House might testify before trial or while he was preparing post-trial motions; if

anything, the record proves otherwise.  Moreover, Johnson does not allege that Blum still

represented him when House came forward, or that procedurally he could have filed

additional motions at that time.

Even if Blum requested a new trial based on House's "newly discovered"

testimony, we agree with the appellate court's conclusion that such evidence would not

be so conclusive as to warrant a new trial.  *People v. Johnson*, No. 1-02-1116, slip. op. at

5.  As discussed earlier, House's varying testimony over the years is not overwhelmingly

---

[12]To the extent that Johnson alleges Blum was deficient for neglecting to subpoena House's testimony, we cannot agree.  Blum cannot be faulted for failing to subpoena an admittedly hesitant former co-defendant with uncooperative counsel, particularly without knowing what House might say about Petitioner's involvement and with no additional opportunity to interview him.  *See, e.g.*, *Timberlake v. Davis*, 409 F.3d 819, 824-825 (7th Cir. 2005) (affirming denial of writ where petitioner alleged counsel should have subpoenaed truculent witnesses for penalty hearing).

reliable, would be contradicted by eyewitnesses and may be subject to impeachment based on his attempted murder conviction. Accordingly, and even if Blum acted unreasonably, we could not find that Johnson was prejudiced by the failure to rely on House's testimony in a motion for a new trial.

*5. Failure to cross examine prosecution witness Frederick Johnson using records showing he was mentally handicapped*

Johnson next argues that Blum was ineffective by failing to cross examine Petitioner's uncle, Frederick Johnson, concerning his mental limitations. Frederick provided testimony at trial that conflicted with the written statement he gave police earlier, in which he described Petitioner's participation in the shooting. Petitioner argues that Frederick's conflicting testimony could have been explained by his mental handicap, if Blum had elicited that information on cross-examination. However, as the appellate court observed, the trial transcript reflects that Frederick testified that he was attending a special education school, that he could hardly read and that he had misspelled his own name on direct examination. In fact, Blum testified that it was "apparent to anybody listening to" Frederick that he was mentally deficient. (Tr. Post-Conv. Proceedings at A-109.) Regardless, Blum moved, though unsuccessfully, to have the jury disregard Frederick's testimony. A cross-examination of Frederick using his psychological records, which indicated that he was educably mentally handicapped, would have amounted to cumulative evidence, given the ample evidence on the record of Frederick's mental handicap. In *United States ex rel. Kleba v. McGinnis*, the Seventh Circuit addressed a claim of ineffective assistance of counsel after failure of counsel to introduce cumulative evidence:

> Accordingly, [counsel] could reasonably conclude that the photographs would have had little if any probative value concerning the origin of Kleba's injuries (providing at most cumulative evidence of the nature and extent of his injuries, rather than the

origin).  Viewed in the context of the entire trial, we hold that the decision of the trial attorney not to introduce the photos constituted a proper and reasonable trial tactic that does not fall below an "objective standard of reasonableness."  The Supreme Court's decision in *Strickland* made the law eminently clear that the judgments of counsel involving strategic decisions will not be considered as a proper basis for bringing a Sixth Amendment ineffective assistance of counsel claim.

796 F.2d 947, 955 (7th Cir. 1986).  We therefore have difficulty blaming Blum for failing to cross-examine the witness on a point that was already in evidence and obvious to the jury.  And as the appellate court observed, such cross-examination might have served only to alienate the jury.

Petitioner objects to the failure to cross-examine Frederick as that line of questioning might have provided valuable proof to the jury that the witness was "easily led."  By this argument, we presume that Johnson not-so-subtly suggests that Frederick was "easily led" by the police into implicating Petitioner as one of the shooters.  Any argument highlighting the manipulability of Frederick Johnson might have cut both ways, and instead convinced the jury that Frederick had been coerced by his relatives into altering his testimony to benefit Petitioner.  In light of the above, we hold that Blum's decision not to cross-examine Frederick Johnson using his psychological records was a matter of reasonable trial strategy and did not violate Petitioner's Sixth Amendment rights.

*6. Failure to object to allowing Frederick Johnson's written statement to be sent back to the jury during deliberations*

Petitioner also claims that Blum was ineffective by not objecting to the jury's consideration of Frederick Johnson's written statement during deliberations.  Petitioner does not contend that the written statement was not admitted as evidence; the record

clearly indicates it was. *People v. Lee* dealt with a factually similar case, where during

deliberations, the jury was allowed to review a witness's written statement to the police

made on the night of the shooting that he saw the defendant shoot the victim, although

the trial court did not allow the jury to review a transcript of that same witness's in court

testimony. 243 Ill. App. 3d 1038, 1043-1044, 614 N.E.2d 108, 112-113 (1st Dist. 1993).

As in the present case, the written statement had been admitted into evidence. In *Lee*, the

defendant argued on appeal that "sending Carter's written statement to the jury

overemphasized the statement and encouraged the jury to reject his self-defense

argument." *Id.* at 1044. The *Lee* court held that the decision to send the statement into

the jury room was within the trial court's discretion, a ruling which has extensive basis in

Illinois case law.[13] Petitioner presents no evidence that he was prejudiced by the

admission of the written statement to the jury room, arguing instead that Blum's repeated

references to it gave it unnecessary weight. (Pet. at 31-32.) However, the consideration

of the weight of the evidence is well within a jury's discretion. Moreover, once the

statement was admitted into evidence, either attorney was free to comment on its

credibility at whatever length they felt appropriate during closing arguments. *Lee*, 243

Ill. App. 3d at 1044; *see United States v. McKee*, 389 F.3d 697, 699 (7th Cir. 2004) ("[A]

prosecutor may properly comment on the credibility of witnesses as long as the comment

---

[13]"Whether evidentiary items should be taken into the jury room rests within the discretion of the trial court." *People v. Arnold*, 139 Ill. App. 3d 429, 435, 487 N.E.2d 997, 1002 (1st Dist. 1985); *see People v. Greer*, 79 Ill. 2d 103, 117, 402 N.E.2d 203, 209-210 (Ill. 1980) (holding that the discretion of the trial court will not be disturbed absent the showing of an abuse to the prejudice of the defendant); *see also People v. Watson*, 107 Ill. App. 3d 691, 696, 438 N.E.2d 453, 457 (3d Dist. 1982) (holding that the trial court can allow tangible objects which have been duly admitted into evidence to go into the jury room if those objects are relevant to any material issue).

reflects reasonable inferences drawn from the evidence presented at trial rather than personal opinion.").  We hold that the trial court was well within its discretion to allow the jury to review Frederick Johnson's written statement, which had been admitted into evidence, during their deliberations.  Accordingly, Blum's failure to object to that decision does not constitute ineffective assistance of counsel.

7. *Failure to request a limiting instruction on the jury's consideration of the prior convictions of the defense witnesses*

Johnson claims that Blum's failure to request a limiting instruction on the jury's consideration of the prior convictions of defense witnesses allowed the jury members to view the witnesses' prior convictions as evidence that Leo Patterson was murdered over a $45 drug debt.  In *Biggerstaff v. Clark*, the court held that counsel's failure request a limiting instruction as to the defendant's prior conviction did not constitute ineffective assistance of counsel:

> Although Biggerstaff might have benefited from an instruction that the prior conviction could not be used as evidence of guilt, such instruction would carry with it a reminder that the jurors could rely on the prior conviction when assessing the defendant's credibility, which could be very damaging. It would be impossible to give the instruction as to what the evidence could not be used for without emphasizing that the evidence could be used to reflect upon Biggerstaff's honesty. Because Biggerstaff's credibility was so important, it would be reasonable to decide that the overall effect of the instruction, if given, would have harmed rather than helped the defendant. Since his testimony was critical to his defense, Biggerstaff has not shown a reasonable probability that the outcome would have been different if counsel had requested the limiting instruction.

999 F.2d 1153, 1155-1156 (7th Cir. 1993).  As with *Biggerstaff*, any limiting instruction would have served to remind the jury of the defense witnesses' convictions, which might have compromised their credibility further.  In *United States v. Liefer*, the Seventh Circuit held that the failure to request a limiting instruction did not rise to the level of

ineffective assistance of counsel as "in light of the substantial evidence against [defendant], there is no probability that the outcome of his trial was prejudiced by the alleged deficiency." 778 F.2d 1236, 1253 (7th Cir. 1985). Similarly, in light of the evidence against Petitioner, including the eyewitness testimony and the written statement of Frederick, Petitioner was not prejudiced by the absence of a limiting instruction.

*8. Blum improperly elicited testimony from Officer James Robinson that provided details consistent, rather than inconsistent, with the eyewitness testimony of Darryl Patterson*

Petitioner's next argument is that Blum improperly elicited testimony from Officer James Robinson that was consistent with the testimony of State's witness Darryl Patterson. Blum called Officer Robinson to impeach Darryl Patterson's identification of Petitioner as the shooter. Patterson testified that, on the night of the shooting, he failed to mention to the officers that the person who approached his brother about payment of a debt was also one of the shooters. To the contrary, Officer Robinson testified that Patterson told police that the person who approached his brother Leo was one of the shooters. As intended, Blum successfully impeached Patterson on this point. Johnson is correct that in order to elicit that impeaching testimony, Blum had to elicit information confirming some of the details described in Darryl Patterson's testimony. Indeed, Blum may have been unable to develop the *inconsistent* details for impeachment without first eliciting the *consistent* details from Officer Robinson. As the appellate court found, there is no indication that, had the consistent details regarding the surrounding circumstances of the crime not been included in Robinson's testimony, the outcome of the trial would have been any different. Nothing in the record suggests that Blum's line of questioning

was an unreasonable strategy, or that Petitioner was prejudiced as a result.

      *9. Ineffective assistance of counsel for improperly eliciting the fact that several of the defense witnesses were unemployed, which bolstered the State's motive theory*

      Next, Petitioner objects to Blum's direct examination of several defenses witnesses, which brought out the potentially damaging testimony that they were unemployed. Petitioner contends that Blum should have refrained from questions eliciting this testimony, thus requiring the State to do so on cross-examination. As the Seventh Circuit observed, "[m]inimizing the 'sting' of an opponent's impeachment by initiating the impeachment yourself is a time-honored trial tactic, however, one practiced by prosecutor and defendant alike." *United States v. Ewings*, 936 F.2d 903, 909 (7th Cir. 1991). The technique of eliciting unfavorable, credibility-compromising facts on direct examination is certainly reasonable, and like the appellate court*,* we cannot find a claim of ineffective assistance of counsel on such a basis. Petitioner makes no attempt to demonstrate prejudice arising from the inclusion of the unemployment testimony.

      Additionally, the unemployed status of the defense's four witnesses did not force the conclusion that Petitioner was also unemployed, and so would have had reason to seek payment of a debt. In fact, the trial transcript indicates that Petitioner testified that he was employed. Johnson has not demonstrated that this evidence altered or affected the effectiveness of the State's theory of the case. He also failed to show that the admission of this testimony would not have occurred during cross-examination. As Petitioner has failed to demonstrate that Blum's eliciting of potentially impeaching testimony on direct examination was an unreasonable trial strategy or that he was prejudiced by the testimony, we agree with the appellate court that counsel's conduct does not amount to

ineffective assistance.

*CONCLUSION*

For the foregoing reasons, Earl Johnson's petition for writ of habeas corpus is denied. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated: June 6, 2006