UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ) <br>     EARL JOHNSON, ) <br> ) <br>     Petitioner, ) <br> ) <br>                v. ) <br> ) <br> JOHN CHAMBERS, ) <br> ) <br>     Respondent. ) <br> ) | No. 05 C 2475 |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

On November 7, 1994, a jury convicted Petitioner Earl Johnson ("Petitioner" or "Johnson") of the first degree murder of Leo Patterson and the attempted first degree murder of Dexter Patterson.[1] Following the denial of his appeal and post-conviction petition, Johnson petitioned this Court for a writ of habeas corpus, which we denied on June 7, 2006. *See Johnson v. Chambers*, No. 05 C 2475, 2006 WL 1594025, at *14 (N.D. Ill. June 7, 2006) [hereinafter "Order"]. Presently before us is Johnson's motion for a certificate of appealability ("COA"). For the reasons set forth below, we grant Johnson's request for a COA in part.

## STANDARD OF REVIEW

A COA is required to take an appeal to the Court of Appeals from a final order in a proceeding under 28 U.S.C. §§ 2254 or 2255. 28 U.S.C. § 2253©. "A certificate of

---

[1]The Illinois appellate court vacated Johnson's conviction for aggravated battery with a firearm on July 21, 1997, as a lesser included offense of attempted murder.

appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 483-484, 120 S.Ct.1595, 1603-1604 (2000), laid out two methods by which a district court is to evaluate a request for a COA. First, when the district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessments of the constitutional claims debatable or wrong," *id.* at 484, or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *id.* (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4, 103 S.Ct. 3383, 3395 (1983)). Alternatively, "when the district court reject[s] a petitioner's claims on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484 (emphasis added).

**ANALYSIS**

Johnson seeks a COA as to multiple issues relating to his ineffective assistance of counsel claim. First, he alleges that reasonable jurists would debate our procedural decision that he waived his claim that trial counsel was ineffective for failing to cross-examine eye witness Dexter Patterson about his blood alcohol content at the time of the shooting. (Request for COA at 5-11.) Second, he contends that reasonable jurists would debate our substantive decisions that counsel was not ineffective, and/or that he was not prejudiced, by counsel's: (1) failure to request a mistrial after four alibi witnesses were barred from testifying; (2) failure to investigate

-2-

and present testimony from additional witnesses; (3) failure to cross-examine his uncle, Frederick Johnson, with records evidencing his mental handicap; (4) eliciting evidence and making arguments that damaged the defense; and (5) failing to request a limiting instruction concerning the jury's consideration of evidence of defense witnesses' prior convictions. (*Id.* at 11-33.) We address each argument in turn.

### A. Procedural Default Ruling

Johnson claims that he fully and fairly presented to the state court his federal claim that counsel was constitutionally ineffective for failing to cross-examine Dexter Patterson using a document showing his blood alcohol content was .289 at the time of the shooting. (*Id.* at 8.) Johnson admits that he did not raise this issue in his initial or supplemental post-conviction petitions but argues that he presented evidence to the state court at his post-conviction evidentiary hearing. According to Johnson, this evidence "was sufficient to alert the state court that this factor was a basis for [his] ineffective assistance of counsel claim." (*Id.*) He then raised this issue on appeal of the dismissal of his post-conviction petition and in his petition for leave to appeal ("PLA") with the Illinois Supreme Court. In affirming the dismissal, the appellate court held that Johnson waived this argument by failing to include it in his supplemental post-conviction petition.[2] *People v. Johnson*, No. 1-02-1116, slip. op. at 8 (1st Dist. Mar. 31, 2004). We agreed with the appellate court's conclusion in our Order. Order, 2006 WL 1594025, at *5. Nonetheless, we will grant Johnson a COA on this issue because reasonable jurists could

---

[2]The appellate court also observed that, "even if the issue had not been waived, Johnson has not shown a reasonable probability that further impeachment of Dexter would have changed the outcome of the trial" because Dexter admitted that he had consumed "a few beers." *People v. Johnson*, No. 1-02-1116, slip. op. at 8 (1st Dist. Mar. 31, 2004). The Illinois Supreme Court denied his PLA on October 6, 2004.

theoretically debate whether he sufficiently articulated this issue at the evidentiary hearing and whether counsel's failure to fully cross-examine Dexter Patterson violated Johnson's Sixth Amendment right to counsel.

Fair presentment requires a petitioner "to assert his federal claim through one complete round of state-court review, either on direct appeal or in post-conviction proceedings." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* Although Johnson neglected to include this argument in his petition, his post-conviction counsel did address the issue (however briefly and indirectly) while examining Johnson's trial attorney, Milton Blum, at the evidentiary hearing on April 16, 2002.[3] Johnson's counsel questioned Blum about a medical report indicating that Dexter Patterson was heavily intoxicated on the night of the shooting. (Tr. Post-Conv. Proceedings at A-82-86.) Responding to an objection from the state's attorney, Johnson's counsel described the significance of the medical report, commenting that "the purpose for . . . this information is that we have to show prejudice; that if there was a new trial, the newly discovered evidence could have made a difference in the outcome." (*Id.* at A-85-86.) The court refused to admit the report into evidence, finding that it was not newly discovered. (*Id.* at A-86.) Counsel touched on the

---

[3]The well-established Illinois Post-Conviction Hearing Act explicitly states that "any claim of substantial denial of constitutional rights not raised in the original or an amended [post-conviction] petition is waived." 725 ILCS § 5/122-2.1. While reasonable jurists might debate whether Johnson raised this particular ineffective assistance issue during the hearing, we are not convinced they would question that the post-conviction statute constitutes an adequate – that is, regularly followed – and independent state procedural ground precluding habeas review. While we grant the COA, we decline to rule on Johnson's argument that the statutory waiver provision was not regularly followed or firmly established at the time he sought post-conviction review. (Request for COA at 9-10.)

fact that Blum possessed but failed to use the report at trial, which suggests that Johnson intended an alternative ineffective assistance of counsel claim. Given Johnson's prejudice argument before the state court, we conclude that reasonable jurists could debate whether he fairly raised this issue in the context of an ineffective assistance claim. *See Strickland v. Washington*, 466 U.S. 668, 688, 696, 104 S. Ct. 2052, 2064-2065, 2069 (1984) (requiring defendant to show objectively unreasonable representation and resulting prejudice to make out an ineffective assistance claim). In addition, we believe reasonable jurists would debate whether Blum's performance was unreasonably deficient and prejudicial to Johnson's defense.

### B. Ineffective Assistance Rulings

#### 1. Failure to Request a Mistrial

During cross-examination of Darryl Patterson (Dexter's brother and the other eyewitness to the crime) at Johnson's trial, Blum informed the court that certain defense witnesses were present in the courtroom despite an exclusion order. (Trial Tr. at G-61.) The court then forbade four witnesses, including Johnson's mother and brother, from testifying. (*Id.* at G-62-65.) Although not promising to grant a motion, the trial judge suggested that Blum request a mistrial and granted a recess for him to discuss the matter with Johnson. (*Id.* at G-66.-69.) ("I'm not telling you that you are going to get it, I'm telling you right now you have to make a decision.") After the recess, Blum announced that the defense would proceed, being "well aware of what the risk might be, of course." (*Id.* at G-71.) When Blum added that they did not know whether the court would have granted a mistrial, the judge responded that he "yes, absolutely" would have done so. (*Id.*) Blum acknowledged that "he kind of knew it" and asked when the next trial date would be had a mistrial been granted. (*Id.*) Johnson argues that Blum was ineffective for failing

to seek a mistrial, particularly in light of the judge's apparent willingness to grant such a request. Like three defense witnesses who testified, these four witnesses allegedly would have stated that they were with Johnson at his house watching a movie at the time of the shooting.

As noted in our Order, the decision whether to move for mistrial or to proceed with the expectation of acquittal is generally considered a matter of trial strategy, entitled to deference. Reasonable jurists, however, would debate whether Blum should have requested a mistrial under the circumstances described above. The judge, for example, may have been amenable to a motion for a mistrial even after announcing how he would decide. Although we believe our Order is correct, we grant Johnson a COA on this issue because reasonable jurists could also debate whether he suffered any prejudice from counsel's failure to seek a mistrial, particularly given the importance of alibi testimony to Johnson's defense.

2.  **Failure to Investigate and Present Testimony of Hubbard Brothers**

To the contrary, however, reasonable jurists would not debate whether Blum was ineffective for failing to investigate and present testimony from two of Johnson's neighbors, Rushaun Hubbard and his brother.[4] According to Hubbard's affidavit, signed May 17, 2000, he was at home with his family on the night of the murder, December 4, 1993. (Common Law R. Post-Conv. Proceedings, Vol. I of II, at C186-187, ¶ 2). About two or three minutes after hearing gunshots, Hubbard moved to the living room window to look outside. (*Id.* ¶ 3.) He then went outside with his brother, "saw Earl Johnson emerging from the side entrance of his house" across the street, and had a conversation with him. (*Id.* ¶¶ 4, 6.) Hubbard stated that prior to

---

[4]Johnson has not presented any evidence regarding Hubbard's brother or what he would have said if he testified at trial.

that point, he did not see anyone entering or leaving the Johnson home. (*Id.* ¶ 5.) He stated that no one associated with Johnson – including Blum – ever interviewed him. (*Id.* ¶ 7.) Johnson claims that Blum's failure to canvass the neighborhood and locate additional witnesses, like Hubbard and his brother, violated his constitutional right to counsel.

Although the failure to conduct a proper investigation may constitute ineffective assistance under rare circumstances, reasonable jurists would not find those circumstances here. *See, e.g., Adams v. Bertrand*, 453 F.3d 428, 436-438 (7th Cir. 2006) (finding counsel ineffective where he refused to contact an exculpatory eyewitness who was present for critical events about which the testimony sharply conflicted); *Hampton v. Leibach*, 347 F.3d 219, 246-257 (7th Cir. 2003) (concluding that counsel was ineffective in failing to investigate known eyewitnesses and independently search for other eyewitnesses, where such individuals would have "given the jury a powerful reason to doubt [petitioner's] culpability"). The fact that Blum apparently did not interview Hubbard does not necessarily mean that Blum failed to conduct *any* meaningful investigation. Blum and Johnson were aware of nearly a dozen alibi witnesses, at least seven of whom were to testify at trial that he was at home at the time of the attacks.[5] Indeed, Blum's May 23, 2000 affidavit states that he "did not canvass the neighborhood because [he] felt that the alibi witnesses [he] was already aware of were sufficient." (Common Law R. Post-Conv. Proceedings, Vol. I of II, at C172-173, ¶ 8). This is not a case where the defendant faced trial with no witnesses and no defense. Most importantly, Hubbard's testimony simply would not show that Johnson did not participate in the crimes for which he was convicted. Hubbard was

---

[5] As discussed earlier, the court barred four of these witnesses for violating the exclusion order.

not an eyewitness to the shooting and could not confirm that Johnson was not involved. *See Adams*, 453 F.3d at 436-438; *Hampton*, 347 F.3d at 246-257. At best, he could have testified that he saw Johnson leave his home sometime shortly after the attack. In light of the alibi witness testimony placing Johnson inside his house at the critical time, reasonable jurists would not debate that Johnson was not prejudiced by Blum's failure to present Hubbard. Therefore, we deny his request for a COA on this issue.

        **3.**      **Failure to Investigate Evidence of Zachary Peavey's Involvement**

We also deny Johnson's request with respect to Blum's alleged failure to seek a new trial using evidence that Zachary Peavey killed Leo Patterson. Two days after Johnson's conviction, his mother (Renee) received an anonymous phone call from a woman who claimed that Peavey admitted shooting the victim and who informed Renee that the Broadview police recovered a weapon from Peavey. (Tr. Post-Conv. Proceedings at B-57-65, 71-72.) Renee shared this information with Blum a few days later. (*Id.* at A-93-94;B-60, 77.) Blum took no action but suggested that Renee work with the police, which she did. (*Id.* at A-94-95.) Subsequent testing showed that the gun found on Peavey at the time of his arrest, several weeks after the Patterson shooting, was the murder weapon. (Common Law R. Post-Conv. Proceedings, Vol. I of II, at C185 (examiner's report concluding that the bullet recovered from Leo Patterson's body was fired from Peavey's pistol).) In his habeas petition, Johnson claimed that Blum was ineffective for failing to move for a new trial based on this newly-discovered evidence. We denied the petition, agreeing with the Illinois appellate court that this evidence would not have warranted a new trial because Johnson was convicted on an accountability theory. Order, 2006 WL 1594025, at *10.

For the reasons described in our Order, we do not believe that reasonable jurists could dispute this conclusion. The fact that police recovered the gun on Peavey at a later date does not prove that Johnson did not fire the gun at the Pattersons on December 4, 1993. Moreover, even if Peavey's admission and ballistics evidence convinced the jury at a new trial that he killed Leo Patterson, Johnson still could have been convicted on an accountability theory. As such, Blum was not constitutionally ineffective for not investigating and utilizing this evidence when preparing post-trial motions.[6]

### 4. Failure to Investigate Testimony of Fred House

Johnson next alleges that Blum was ineffective for failing to investigate and present the testimony of Fred House, who drove the car during the drive-by shooting in question. House was accused of participating in the crimes against the Pattersons, but was acquitted of all charges prior to Johnson's trial. Due to House's status as co-defendant, Blum "could not communicate with [him]" prior to his acquittal. (Tr. Post-Conv. Proceedings at A-89-90.) Within a week of House's acquittal, Blum visited him in jail and asked him general questions about his trial. (*Id.* at A-90-91 (stating that he "did not ask him for any details of his involvement or non-involvement".) At the time, House was awaiting trial on another attempted murder charge, to

---

[6]We again observe that, even if this evidence was so conclusive to justify a new trial, it appears to have been available during the original trial. Order, 2006 WL 1594025, at *10 n.9. Wendy Floyd – one of the women who allegedly heard Peavey's admission – testified at the post-conviction evidentiary hearing that she told Blum about the confession *during* Johnson's trial. (Tr. Post-Conv. Proceedings at A-20-21, 29-30.) Both women (Floyd and Kimberly Hilliard) also stated that they informed Johnson of Peavey's admission while he was in jail awaiting trial. (*Id.* at A-22-23 (Floyd), A-58-61 (Hilliard).) Based on this testimony, it is unlikely that evidence of Peavey's admission would have qualified as "newly discovered," thus warranting a new trial under Illinois law. *See, e.g.*, *People v. Deloney*, 341 Ill. App. 3d 621, 627, 793 N.E.2d 189, 194 (1st Dist. 2003).

which he eventually plead guilty. (*Id.* at A-91, 135-136.) Thereafter, Blum contacted House's attorney and asked if he would be willing to cooperate in Johnson's defense. (*Id.* at A-92.) House's attorney would not agree to cooperate, "was annoyed" that Blum contacted House, and told Blum not to interview House again. (*Id.* at A-92-93.)

Four years after Johnson's conviction, House signed an affidavit admitting that he drove the car and swearing that Johnson and another co-defendant, Tracey Ferguson, were not involved in the Patterson shootings. (Common Law R. Post-Conv. Proceedings, Vol. I of II, at C165-166 (Nov. 5, 1998 affidavit).) On May 21, 2000, House executed another statement. (*Id.* at C163-164.) While there are factual discrepancies between the two affidavits, House again swore that he drove the car and that Johnson was not involved. (*Id.*) Blum was not aware of this information prior to Johnson's trial. (Common Law R. Post-Conv. Proceedings, Vol. I of II, at C172-173, ¶ 2 (May 23, 2000 affidavit).)

Under these circumstances, we cannot agree with Johnson that reasonable jurists would debate our finding that Blum acted reasonably in concluding that House would not be willing to testify voluntarily on Johnson's behalf. Despite Blum's efforts to appease House's attorney, counsel apparently told Blum that he would not cooperate and that Blum should not contact House again. (Tr. Post-Conv. Proceedings at A-92-93.) Contrary to Johnson's argument, Blum *did* follow-up with House's counsel, who forbade him from further contacting House. (Request for COA at 25-26.) Furthermore, and as explained briefly in our Order, we do not believe Blum could prevail with any potential argument that Blum should have subpoenaed House's testimony. Order, 2006 WL 1594025, at *11 & n.12 (observing that election not to subpoena House was reasonable and concluding that Johnson was not prejudiced by House's absence, in light of his

varying statements over the years, the likelihood of impeachment on his attempted murder conviction, and contradictory eyewitness testimony). Accordingly, we deny Johnson's request for a COA on these questions.

### 5. Failure to Impeach Frederick Johnson

Johnson claims that reasonable jurists would disagree with our conclusion that Blum was not ineffective for failing to cross-examine his uncle, Frederick Johnson, "with medical records indicating he had been diagnosed as Educably Mentally Handicapped with an IQ in the mentally deficient range." (Request for COA at 28.) At the post-conviction hearing, Blum testified that he received and reviewed the various documents evidencing Frederick's mental limitations. (Tr. Post-Conv. Proceedings at A-107-108.) He further stated that he discussed the possibility of using these documents with Johnson and his mother, but decided against it. (*Id.* at A-108.) Blum explained that he "did not present live witness testimony or documentary evidence regarding this issue because [he] thought that this conclusion would be drawn by the jury after they saw Fred testify." (Common Law R. Post-Conv. Proceedings, Vol. I of II, at C172-173, ¶ 9 (May 23, 2000 affidavit).) Indeed, he testified that it was "apparent" to all jurors and alternates that Frederick was mentally deficient. (Tr. Post-Conv. Proceedings at A-109.) Given these circumstances, including counsel's deliberate decision not to use the documents, and for the reasons discussed in our Order, we decline to grant a COA on this issue.

### 6. Conduct Damaging to the Defense

Johnson also seeks a COA because Blum: (a) elicited testimony from Officer James Robinson setting forth numerous consistent details about Darryl Patterson's identification of Johnson, rather than focusing on the inconsistent details; (b) elicited testimony from four alibi

-11-

witnesses that they were unemployed; and © "gave considerable attention during closing argument to Fred Johnson's" written statement to police implicating his nephew. (Request for COA at 29-31.) After again reviewing the trial transcripts and other relevant submissions, we hold that reasonable jurists could not debate the conclusions found in our Order.

First, Blum's questioning of Officer Robinson was entirely reasonable. Blum did impeach Darryl Patterson's identification of Johnson to some extent by eliciting a prior inconsistent statement he made to Robinson. (Trial Tr. at I-63-81.) In addition, Blum appears to have challenged the adequacy of Robinson's investigation, pointing out a number of questions he neglected to ask Darryl that, if answered, could have been used to help identify the shooters. Although Blum elicited testimony from Robinson that corroborated Darryl's account, jurists could not debate our holding that Blum may have been unable to emphasize the inconsistencies and deficiencies without first eliciting the consistencies.

Second, Johnson's claim that Blum was ineffective for eliciting testimony about the unemployment of four witnesses is meritless. Although he quickly asked each of the four men if they were employed while eliciting general background information, he did not belabor the point.[7] Nor did the state press this issue, as counsel did not cross-examine three of the four witnesses on their employment or criminal histories. The only witness cross-examined about his employment history was Leon Buckner, who had testified that he was employed with the National Guard.[8] (*Id.* at I-119.) Contrary to Johnson's suggestion, the witnesses' testimony did

---

[7]One of these witnesses – Mario Raines – testified that he was unemployed *but still in high school* at the time. (Trial Tr. at J-12.)

[8]Johnson overstates his complaint that the prosecution "grill[ed] Buckner for over two pages on his lack of employment." (Request for COA at n.3.) In the exchange on cross-

-12-

not necessarily cause the jury to conclude that "defendant's friends were unemployed drug users," thus linking him to the crime. (Request for COA at 30.) Moreover, Johnson testified that he was employed, that he never had any dealings with Leo Patterson, and that Leo did not owe him anything, thus counteracting any inference that he killed Leo over a drug debt. (Trial Tr. at J-15-16, 23-24, 47-48.)

Third, Blum's reference to Fred Johnson's prior inconsistent written statement as "marvelous evidence" – while perhaps ill-advised in retrospect – was not objectively unreasonable. (*Id.* at K-50.) The court admitted the written statement into evidence and, as such, counsel was free to address it and the jury was free to consider it. Furthermore, when the comment is taken in context, Blum's purpose appears to have been to downplay the importance of Fred's written statement. (*Id.*) Blum emphasized how convenient the statement was for the prosecution and argued that the state had no interest in preparing a written statement for Johnson to sign summarizing *his* account of events. (*Id.* ("Would the police have taken the time to have taken a statement from him, setting down all the things including his denials and then have him sign it? That would be wonderful. You could take that back into the jury room with you.").) Reasonable jurists would not debate our conclusion that Blum's comment did not give the statement unnecessary weight.

Even if we held that Blum's conduct was deficient, Johnson failed to establish a reasonable probability that the result of his trial would have been different without these alleged errors. *See Strickland*, 466 U.S. at 694. Accordingly, we deny Johnson's request for a COA on

---

examination – which covers barely one page of the transcript – Buckner acknowledged that his work in the National Guard was not full-time and then discussed his previous job, which he left two weeks prior because he did not like the work. (Trial Tr. at I-119-120.)

these issues.

7. **Failure to Request a Limiting Instruction**

Finally, Johnson alleges that Blum was ineffective for failing to request a limiting instruction informing the jury that evidence of prior convictions could be used only to assess witnesses' credibility. (Request for COA at 31-33.) Because we find that reasonable jurists would not debate our original ruling on this issue, we decline to grant a COA.

Failure to request a limiting instruction under such circumstances does not, without more, result in constitutionally ineffective assistance of counsel. *Biggerstaff v. Clark*, 999 F.2d 1153, 1155 (7th Cir. 1993). Moreover, Johnson failed to demonstrate how he was prejudiced by Blum's conduct. Johnson testified that Leo did not owe him money, and neither party presented any evidence that Johnson had prior convictions for any type of offense. Although he claims that the instruction was necessary, it may have simply prompted the jury to question the credibility of the two defense witnesses.[9] *Biggerstaff*, 999 F.2d at 1155-1156 (observing that "[i]t would be impossible to give the instruction as to what the evidence could not be used for without emphasizing that the evidence could be used to reflect upon [the witness'] honesty"). Even if Blum performed unreasonably, reasonable jurists would not find sufficient prejudice in light of the other alibi and eyewitness testimony available.

---

[9]Johnson also suggests that, if given, the instruction would have caused the jury to question Fred Johnson's testimony or prior inconsistent statement. (Request for COA at 33.) We do not agree with Johnson that the limiting instruction would have redeemed his witnesses, while undermining the already inconsistent testimony of a prosecution witness.

-14-

## CONCLUSION

For the above stated reasons, we grant Johnson's request for a COA as to his claims that Blum was ineffective for failing to: (1) cross-examine Dexter Patterson using a document showing his blood alcohol content was .289 at the time of the shooting; and (2) request a mistrial after the exclusion of four alibi witnesses. We decline to issue a COA on the other issues raised by Johnson. It is so ordered.

                                              MARVIN E. ASPEN
                                              United States District Judge

Dated: September 14, 2006